IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**AUSTIN M. PULLIAM**                                                                        **PLAINTIFF**

**v.**                                                                       No. 3:23-cv-389-MPM-RP

**BENTON COUNTY SCHOOL
DISTRICT and JADA RICH**                                            **DEFENDANTS**

**ORDER**

This matter comes before the Court on two separate summary judgment motions, one by Defendant Benton County School District [26] and one by Defendant Jada Rich [28]. Plaintiff Austin M. Pulliam has responded to both [35, 39]. The Court, having reviewed the record and having carefully considered the applicable law, is now prepared to rule.

FACTS

Coach Pulliam's employment at the Benton County School District was brief and mired in controversy. A white, first-time basketball coach at a mostly black school, Coach Pulliam's tenure ran smoothly until day two. Then, while playing basketball with black coworker Jada Rich, the two began discussing presidential politics. At the end of this discussion, the parties realized that they supported separate candidates, and Coach Pulliam now believes, though he did not realize it at the time, that this was when their relationship ran afoul.

Jumping forward seven days, Ms. Rich submitted a written complaint to the principal accusing Coach Pulliam of the following conduct: (1) comparing a young black male to "a monkey," (2) talking negatively about a fellow coach, (3) telling Ms. Rich a rumor that another male coach was receiving lap dances from female students, (4) using tobacco in Ms. Rich's

classroom, and (5) telling Ms. Rich his former black teammates told him it was okay for him to call them "nigga." Coach Pulliam, while contesting ever calling anyone a monkey or talking badly about another coach, admitted to the lap-dance, classroom tobacco-usage, and racial-language charges. The next day, he was given the option of resigning or being terminated. He resigned.

Coach Pulliam then filed suit against both Jada Rich and the Benton County School District ("BCSD") claiming (1) "violation of his First Amendment rights by Defendant Rich," (2) "race discrimination in violation of Title VII, 42 U.S.C. § 1981, and the Fourteenth Amendment equal protection clause," (3) "breach of contract," and (4) "interference with contract by Defendant Rich." In his Memorandum in Opposition to Ms. Rich's Motion for Summary Judgment, Coach Pulliam waived all but one of his claims against Ms. Rich, stating, "Plaintiff will not pursue any claims of a constitutional violation against Defendant Rich…. Plaintiff's sole claim against Defendant Rich is one for interference with an employment contract." Additionally, although in his Complaint he claims three theories of race discrimination, Coach Pulliam never addresses Defendant Benton County School District's argument that his equal protection theory fails. His equal protection claim is therefore abandoned and bound to be dismissed. *See McMullen v. Starkville Oktibbeha Consolidated Sch. Dist.*, 200 F.Supp.3d 649, 654 (N.D. Miss. 2016). Thus, the only claims remaining against Benton County School District are Title VII race discrimination, § 1981 race discrimination, and breach of contract. The single claim remaining against Ms. Rich is interference with contract.

ANALYSIS

*I. Race Discrimination by BCSD*

Coach Pulliam claims he was fired because he is white, and sues for this alleged racial discrimination under Title VII and §1981. "The analysis of discrimination claims under § 1981 is

identical to the analysis of Title VII claims." *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017). Racial discrimination claims are analyzed under the *McDonnell Douglas* burden-shifting framework. *See Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First: "the plaintiff must establish a prima facie case of discrimination." *Russell*, 235 F.3d at 222 (citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000)); *McDonnell Douglas Corp*, 411 U.S. 792 (1973). Second: if the plaintiff successfully establishes a prima facie case, then the burden shifts to the defendant to "respond with a legitimate, nondiscriminatory reason for its decision." *Russell*, 235 F.3d at 222. Third: if the defendant meets this burden, then the burden shifts back to the plaintiff to offer "sufficient evidence to create a genuine issue of material fact that either (1) the defendant's reason is false and is a pretext for discrimination, or (2) that the employer's reason, while true, is only one of the reasons for its conduct, and the plaintiff's protected characteristic was a 'motivating factor' in its decision." *Taylor v. Peerless Inds. Inc.*, 322 Fed. Appx. 355, 361 (5th Cir. 2009) (citing *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)).

In the present case, the first two steps are conceded by the parties—the School District agrees that a prima facie case has been established, and Coach Pulliam agrees that a legitimate, nondiscriminatory reason has been provided. Additionally, since Coach Pulliam eschewed a "motivating factor" analysis—instead choosing to argue that the School District's reason was pretext—that argument is waived. *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 340 (5th Cir. 2005) (stating "[a]n argument must be raised 'to such a degree that the district court has an opportunity to rule on it'" before going into detail about the fourth required step for a "motivating factor" analysis) (citations omitted). Thus, the sole issue is whether Coach Pulliam has met his burden of showing that the Benton County School District's proffered reason for forcing him to

resign—his code of conduct violations—is "not true, but is instead a pretext for discrimination." *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).

Coach Pulliam cannot meet this burden. Evidence of pretext must be "of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Long v. Eastfield College*, 88 F.3d 300, 308 (5th Cir. 1996). Coach Pulliam must do more than show that Defendant's reason was false, he must show "that [the defendant] did not in good faith believe the allegations, but relied on them in a bad faith pretext to discriminate against him on the basis of his [race]." *Swenson v. Schwan's Consumer Brands N. Am., Inc.*, 500 Fed. Appx. 343, 346 (5th Cir. 2012) (citing *Waggoner v. City of Garland, Tex.*, 987 F.2d 1160, 1166 (5th Cir. 1993)). Coach Pulliam has presented no evidence that his race was the reason for the adverse employment action. Even assuming that Ms. Rich intentionally fabricated two of the five alleged code of conduct violations (him calling a black coach a monkey and talking badly about another coach), there is no evidence that she did so because of Coach Pulliam's race. Although Coach Pulliam seems to argue that him being penalized for using the term "nigga" is discrimination ("Plaintiff would not have been terminated for any of the violations except for the conversation where Plaintiff used the term 'nigga' in conversation." [36]), penalizing someone for such inappropriate workplace language, especially when viewed in conjunction with the multiple other violations in his short tenure, is not evidence of discrimination. *Cf. Patrick v. Walmart, Inc.*, 859 Fed. Appx. 687 (Mem) (5th Cir. 2021) *and Vess v. MTD Consumer Grp.*, 755 Fed. Appx. 404 (5th Cir. 2019) (both finding that firing a white employee for using the "N-word" as nondiscriminatory).

Finally, the School District's proffered reason for forcing Coach Pulliam to resign—multiple code of conduct violations within the first ten days—cannot be "false and [] pretext for

discrimination" because it is not "false." *Peerless Inds. Inc.*, 322 Fed. Appx. at 361; *and see Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (requiring "that the defendant's reason is not true, but is instead a pretext for discrimination"). Coach Pulliam admitted to three of the five violations, and these three violations are more than sufficient cause for his termination. For these reasons, Coach Pulliam's racial discrimination claims must be dismissed.

2. Breach of Contract by BCSD

Coach Pulliam next claims the School District breached its contract with him by terminating him without cause. In his response to the School District's argument that his breach of contract claim fails, Coach Pulliam's statement, in its entirety, is as follows:

> Lastly, Plaintiff incorporates the arguments herein as to his breach of contract claim. There is a factual dispute as to whether Plaintiff's contract was terminated for good cause, or the termination was motivated by discrimination or other unlawful motive amounting to a breach of contract.

Since this breach of contract claim is simply a rehashing of the argument that the School District discriminated against Pulliam, and since this Court has held that Coach Pulliam's discrimination claims fail because the School District had cause for termination, Coach Pulliam's breach of contract claim fails as well.

3. Interference with Contract by Defendant Rich

Coach Pulliam's final claim is that Ms. Rich tortiously interfered with his employment contract. To establish a claim of tortious interference with contractual relations, a plaintiff must prove:

> (1) that the acts were intentional and willful; (2) that they were calculated to cause damage to the plaintiffs in their lawful business; (3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on

5

the part of the defendant (which constitutes malice); and (4) that actual damage and loss resulted.

*Neider v. Franklin*, 844 So.2d 433, 437 (Miss. 2003). "Tortious interference requires 'intermeddling ... without sufficient reason.'" *Prog. Cas. Ins. Co. v. All Care, Inc.*, 914 So. 2d 214, 219 (Miss. Ct. App. 2005) (quoting *Morrison v. Mississippi Enter. for Tech., Inc.*, 798 So.2d 567(¶ 28) (Miss. Ct. App. 2001)). According to the Fifth Circuit, "'conduct related to a legitimate, employment-related objective constitutes justifiable acts.'" *Cohly v. Miss. Insts. Of Higher Learning*, 2024 WL 65432 at *4 (5th Cir. Jan. 5, 2024) (unreported) (quoting *Prog. Cas. Ins.*, 914 So. 2d at 219).

In the present case, Coach Pulliam cannot establish tortious interference with contract. The third element requires that an act be committed "without right or justifiable cause." *Neider v. Franklin*, 844 So.2d 433, 437 (Miss. 2003). Even assuming Ms. Rich lied about two of the five charges in her complaint to the School District, surely her reporting of the three admitted violations was justified and related to a legitimate, employment-related objective. And, when only considering the two disputed charges (speaking badly about another coach and comparing someone to a monkey), there is no evidence that suggests Coach Pulliam would have been allowed to keep his job had these two charges not been included in the complaint. Contrarily, it was the "nigga," and tobacco charges that most concerned the administration. Thus, the disputed charges cannot be said to have caused "actual damage and loss," and Coach Pulliam's claim must be dismissed. *Id*.

CONCLUSION

**ACCORDINGLY**, Defendant Benton County School District's Motion for Summary Judgment [26] is **GRANTED**, and Defendant Jada Rich's Motion for Summary Judgment [28] is **GRANTED**.

**SO ORDERED** this the 24th day of January, 2025.

/s/Michael P. Mills
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI